W. M. SMITH, ADMINISTRATOR OF OLLIE C. KISTLER v. MASSACHUSETTS BONDING AND INSURANCE COMPANY.

(Filed 28 April, 1920.)

1. Insurance, Accident—Change of Occupation—Hazardous Risks—Electricity—Employer and Employee—Master and Servant.

The insured was employed as superintendent or supervisor of a corporation engaged in the transmission and manufacture of high power electricity, and his employment was so designated in his policy of insurance, wherein it was stipulated that it would not be forfeited by a change of occupation to one therein designated as in a more hazardous class, for which a higher premium was charged, but that the amount of loss, in case of death, etc., would be diminished in proportion to the difference in the premiums charged. The duty of a lineman was in a more hazardous class, requiring a higher premium than the occupation of superintendent, and the insured was killed from the effect of a current of electricity received by him when cutting a wire to remove a kink therefrom when instructing the lineman how to do so, this being in the course of the lineman's duty to his employer. *Held*, the act of the insured in showing the lineman how to remove the kink came within the scope of the superintendent's or supervisor's employment as such, and was not a change to a more hazardous employment; and it was reversible error for the trial Court to direct a verdict in defendant's favor, that the plaintiff could only recover the reduced amount.

2. Employer and Employee—Master and Servant—Duty to Instruct—Hazardous Employment—Questions for Jury—Matters of Law—Trials.

The right and duty of the master to instruct his servant as to how he should perform dangerous work may involve questions of fact to be decided by the jury, but the right and duty itself, to instruct, in proper cases, exists as a matter of law.

CIVIL ACTION, tried before *Shaw, J.*, and a jury, at October Term, 1919, of MECKLENBURG.

The intestate of the plaintiff was employed by the Southern Power Company, a part of whose business is the manufacture and transmission

of electricity, and the decedent's occupation was the supervision of construction work, building tower and pole lines, and maintenance of the same. The defendant insured him, among other provisions of the policy, against loss of life and the effect of injuries resulting solely from external, violent, and accidental means. The policy contained this clause: "If the assured contracts illness or sustains injury, fatal or otherwise, after having changed his occupation to one class by the company as more hazardous than that herein stated, or while doing any act or thing (except ordinary duties about his residence, or while engaged in recreation) pertaining to any occupation so classed, then this policy shall not be forfeited, but the liability of the company shall be only for such proportion of the principal sum or other indemnity as the premium paid by him would have purchased at the rates and within the limits fixed by the company for such more hazardous occupation, according to its rates and classification of risks filed prior to the occurrence of the injury, or the commencement of the illness for which indemnity is claimed, with the State official having supervision of insurance companies in the State where the assured resides at the time this policy is issued." If the insured violated this provision, the beneficiary is entitled to recover $125, and if he did not, she is entitled to recover $650. The insured stated in his application for the policy that he was "foreman and supervisor, having overseeing duties only." There was evidence tending to show that, at the time he was killed, he was on a tower of one of the power company's lines with a gang of hands or linemen instructing them how to perform their work, and while doing so, and as a part of his duty as foreman or supervisor, he cut a wire where there was a kink in it near the insulators on the loop in order to get the kink out and connect the joints. As he cut the wire he was knocked off the tower and fell forty feet, receiving injuries from which he died. There was evidence tending to prove that cutting the wire, under the circumstances, was a part of his duty in the instruction and supervising of the hands. Witnesses testified that he was there in his capacity as foreman, showing the hands how to do the work; demonstrating at the particular time when he was killed to one of the workmen how the work should be done. He had been foreman for nine years. He was knocked off the tower because the circuit was not grounded on both sides of him, and he therefore received into his body the static current, which means that the electric fluid had been taken off the line and gathered in the wire, one side being grounded and the other side open, and when the wire was cut, it let the static in on the line. The foreman, with his gang, was changing insulators when he was killed. The court directed the jury to answer the issue, "$125, with interest from 23 March, 1918, until paid." The jury returned the following verdict:

· "Is the defendant indebted to the plaintiff, and if so, in what sum? Answer: 'Yes; $125, with interest from 23 March, 1918, until paid.'"

The plaintiff excepted and afterwards assigned as error the charge of the court directing the verdict, and insisted that the court should have submitted the case to the jury upon the evidence to find whether the cutting of the wire was a part of intestate's duty as foreman or was an act of the class forbidden by the policy. The defendant excepted, because the court allowed interest and cost. Plaintiff appealed.

*A. B. Justice and J. D. McCall for plaintiff.*
*J. F. Flowers for defendant.*

WALKER, J., after stating the facts as above: There was no change of occupation by the deceased. He was performing his duty in his occupation as supervisor, foreman, or overseer at the time he was killed, although he may have done one hazardous act not pertaining to that occupation, which caused his death. This has been settled by this Court, and the principle seems to have received the almost uniform approval of the other courts. *Hoffman v. Ins. Co.,* 127 N. C., 338; *Miller v. Ins. Co.,* 168 Mo. App., 330-332; *Schmidt v. Am. M. Acc. Asso.,* 96 Wisc., 304; *Fox v. M. F. Acc. Asso.,* 96 Wisc., 390; *Pac. Mu. Life Ins. Co. v. Van Fleet,* 47 Colo., 401; *Hall Am., etc., Acc. Asso.,* 86 Wis., 518. In the *Hoffman case,* Crisp, the insured, represented that he was "a freight flagman, not coupling or switching," and he was killed while placing a "slack pin" behind a coupling pin, and he was allowed to recover. We do not construe the expression "or while doing an act or thing pertaining to any occupation so classed" as more hazardous, to mean that if the injury is caused by the doing of an act within the line or scope of the insured's employment, if hazardous, he is to be paid only the diminished amount of insurance, if it also be an act which pertains to a more hazardous business, but as meaning, at most, that if he does a more hazardous act of another occupation, not pertaining to his own, the payment to him shall be reduced as specified. Cutting the wire would not be an act or thing more hazardous than his own occupation, as that was a part of his own duty as overseer, as we have shown, and therefore would not be embraced by the following language of the policy: "while doing an act or thing pertaining to any occupation so classed as more hazardous than that herein." Any other construction would make the policy a deception and a snare. The one we adopt is a reasonable interpretation of the language used, and the only admissible one. Under the other construction the company would be saying to the insured: We accept your risk as a supervisor and overseer, but if you do a certain act, which is essential to the proper and full performance of your duties to your employer, you must forfeit the larger part of your insurance.

It was said in *Redmond v. U. S. Health & Acc. Ins. Co.,* 96 Neb., 744: "The diminished liability for which the contract provides applies to a change of occupation, or the doing of an act or thing pertaining to a changed occupation, classed as more hazardous than the one abandoned, and not to mere temporary acts generally performed by those in other occupations, where there has in fact been no change in assured's occupation," citing *Thorne v. Casualty Co.,* 106 M., 274; *Miller v. Mo. State L. Ins. Co.,* 168 Mo. App., 330.

Our case is stronger for the plaintiff than the case from Maine was for Thorne, because here the act done which proved to be fatal was within the line of Ollie Kistler's duty, or there is evidence that it was, and we must assume that evidence to be true in dealing with a directed verdict. The same principle as that decided in the *Redmond case, supra,* was adopted in *Pacific Life Co. v. Van Fleet, supra,* where it was held, as shown by the tenth headnote, that, "A condition in an accident policy avoiding it, or limiting the recovery, in case the assured is 'injured or killed while following any occupation, or in any exposure, or performing acts parallel in hazard to the characteristic acts of any occupation classed by this company as more hazardous,' etc., is effective only where there is a permanent change of occupation. A recovery is not defeated by the circumstances that the assured is injured or killed in performing some individual act, or exposing himself to some particular risk, of greater hazard than that attending his customary occupation upon which the policy was issued."

It will be observed, when reading them, that the cases we have cited go beyond what is necessary for us to hold in order to justify the larger recovery in this case. Here the insured was doing an act directly within the line of his employment as supervisor of the hands. It was his master's legal duty to have them instructed by the foreman or some one else, and his right to have them familiarized with the methods of performing their work, and this is what the intestate was doing when he received the fatal stroke of the electric current, and intestate also was required by the implied terms of his employment to instruct the hands in their work. He could not well supervise them without doing this. It was held in *Schmidt v. A. M. Acc. Asso., supra,* that "The acts of the insured (a supervisor), in such a case, in not only indicating how the work should be done, but actually taking hold and assisting therein when necessary or convenient would not constitute a substantial change of occupation, since the word 'supervising,' as used in the applications, means taking part in the work."

It was said in *Thorne v. Casualty Co., supra,* that "From the nature of the business then is to be implied the duties and responsibilities of his employment. As head of the concern in Gardiner, he was solely

responsible for its management. He was superintendent of every department, and responsible for every detail of the business. The designation of his office, therefore, by necessary implication not only authorized but required him to visit every part of the establishment, to direct in every detail of the work, and, if necessary, point out and illustrate how it should be done. To hold, then, that a person designated as manager of a business concern could not step from his office, to direct the performance of any part of the work, without being charged under an insurance contract with engaging in work defined in the policy as extra hazardous, would be to put a serious check upon the transaction of business, or cut down the indemnity for which a policy holder had fully paid, and to which he would be otherwise entitled."

In *Miller v. Ins. Co., supra:* "As has been stated, it is agreed deceased was a contractor, and we can see no sound reason for the assertion that a contractor loses his character as a supervisor because he sees the need of some temporary labor on his part to enable him properly to carry on his duty of supervision. In this case the evidence shows that deceased was directing or supervising the work, and was not engaged as one of the laborers. If he had not been killed he would soon have left and gone to another place. The fact that after seeing the tank was not working properly he undertook to adjust it, so as to see if it would properly perform its function, did not destroy his capacity as supervisor within the meaning of the schedule of warranties."

And lastly, in *Schmidt v. Ins. Co., supra,* it was said: "Supervising does not mean not working. On the contrary, it means, and would be naturally understood to mean, taking part in the work. Supervising indicates work, not idleness. It would be entirely consistent with supervising if the deceased not only indicated how work was to be done, but actually took hold and assisted in the work when necessary or convenient." This statement of the law was approved in the *Miller case, supra,* at p. 333.

The right and duty of the master to instruct his servant as to how he should perform dangerous work may involve questions of fact to be decided by the jury, but the right, and the duty, to instruct in proper cases will not be denied. *Brazille v. Barytes Co.,* 157 N. C., 454.

It was said in *Horne v. R. R.,* 153 N. C., 239, at p. 240: "The claim of negligence is founded upon the theory that it is the duty of employers to instruct their employees in the use of dangerous machinery before assigning them to their duty. Such obligation is recognized generally by the law writers and courts of the country," citing *Avery v. Lumber Co.,* 146 N. C., 592; *Chesson v. Walker,* 146 N. C., 511; *Craven v. Mfg. Co.,* 151 N. C., 352; *Marcus v. Loane,* 133 N. C., 54; *Turner v. Lumber Co.,* 119 N. C., 388.

There being evidence for the consideration of the jury upon the question of defendant's liability for the larger, or undiminished, amount, it was error to direct a verdict for the smaller amount. It would even be error to instruct the jury that, if they found the facts to be as stated by the witnesses, the verdict should be for the smaller amount.

New trial.