## 12952. CULLARS *v.* THE STATE.

The evidence in this case is not sufficient to show that the "apparatus for the distilling and manufacturing of" intoxicating liquors was located on the premises of the accused.

DECIDED JANUARY 18, 1922.

Indictment for misdemeanor; from Wilkes superior court — Judge Shurley. September 23, 1921.

*Nathan Jolles, F. H. Colley,* for plaintiff in error.

*M. L. Felts, solicitor-general,* contra.

BLOODWORTH, J. The evidence in this case is as follows: W. S. Harrison, the witness for the State, swore: "I know the defendant Aaron Cullars. I was at his house yesterday and found a still in about 250 yards of his house. The still was about a fifty-gallon copper still and showed that it had been recently used. It was set up on a furnace, and, from the condition of the ground

8

around there and of the still itself (it being smoked up and having fresh ashes under it), I would say that it had been used recently. There were tracks of one person at the still, and they had been made on the day, or day before, I went there, as there had been no rain on them and it had rained the day before. The tracks were those of the defendant. I can swear to that, for I saw him in a few moments after. I found the still, and I made him put his foot in the tracks, and they were his tracks. The tracks had a peculiarity. The defendant's toes are short and stubby and this track had that peculiarity. You could see the place where this still was from the defendant's house. You easily [could?] have seen smoke from the still to his house. The still was being fired with fat lightwood knots. There was a pile of them there at the still, and they made black smoke. This still was on a ditch or gully between a cotton-patch and a cornfield, and right at the edge of the woods. You came right out of the gully into the cornfield, and there was a path straight from the still to the defendant's house, and no tracks at the still except the defendant's. The still was a complete still. The [defendant ?] brought water to the still from a hole a short distance away, and the path to the defendant's house and one to this water hole were the only paths around there. The still was in the bank of the gully between the cotton-patch and cornfield. The defendant told me that the cornfield was his and that the cotton-patch was Mr. Powell's. I don't know whose place the still was on except from what the defendant told me. He said that the place belonged to Mr. Powell and that he was working the land where the corn was, and Mr. Powell the land where the cotton was, and the ditch that the still was in was between the cotton and the cornfields. I arrested this defendant at his house, and he appeared very nervous and excited when I walked up on him. He was sitting down, and soon as he saw me he jumped up and commenced to fix his mule's hame-string. He denied that he knew anything about the still. This still and these premises are in Wilkes county. I don't know exactly where the line between Wilkes and Lincoln counties are, but I will swear that this place was in Wilkes county. It was on August 5, 1921, that I found it."

E. V. Powell, the witness for the defendant, testified as follows: "This defendant, Aaron Cullars, works on halves on my

place. I don't know where this still that Mr. Harrison found was. I know that my cornfield and his cotton-patch go pretty close to the line between Wellmaker's place and mine. If the still was as far as 15 or 20 steps in the woods, it would be on the Wellmaker place. I had nothing to do with this still. If it was between the corn and cotton, as Mr. Harrison has said, it certainly is not in my possession. I have not put a still on that ditch, and, if it lays between me and the negro, it is his and not mine. I know nothing whatever of the still."

Granting (but not conceding) that under the foregoing evidence the accused was a tenant, the nearest approach to showing that he was in possession of the premises where the apparatus for distilling was located was that he cultivated the land on one side of and adjacent to the gully in which the apparatus was located. The landlord not only cultivated the land on the other side and adjacent to the gully, but owned the land on both sides of the gully and the gully itself. But if the accused was a cropper (and he seems to have been, as evidence shows that he worked on halves), then, by the express terms of the statute, "the possession of the land remained in the owner." Civil Code (1910), § 3707. See *Parks* v. *Langley,* 17 *Ga. App.* 761 (1) (88 S. E. 695) ; *Kiker* v. *Jones,* 20 *Ga. App.* 704 (1) (93 S. E. 253). The indictment in this case was based upon section 22 of the act approved March 28, 1917 (Ga. L. Ex. Sess. 1917, p. 18, Park's Ann. Code Supp. 1917, § 448 (qqqq)). Before one can be legally convicted under this law it must be shown that the apparatus was located "on his premises," — premises of which he was in actual possession. It will be noted that the landlord did not swear that he was not in possession of the premises where the still was located, nor did he swear that the accused was in possession thereof. Where it is not shown that the accused or any other person rented or leased the land or was otherwise in possession thereof, the presumption would be that the landlord would be "the person in actual possession." While the evidence might be sufficient to support a verdict against the accused of manufacturing intoxicating liquors, it is not sufficient to show that the apparatus was located on his premises, and the court erred in overruling the motion for a new trial. See, in this connection, *Alexander* v. *State,* 25 *Ga. App.* 175 (102 S. E. 878) ; *Atkinson* v. *State,* 25 *Ga. App.* 176 (102 S. E. 887).

The foregoing ruling is based upon the particular facts of this case, and by it we do not intend to hold that under no conditions could a cropper be convicted under the law on which the indictment in this case is based, for it is possible for a case to arise where the accused, although a cropper, would be the person in actual possession of the premises.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*