**ELKINS v. ÆTNA LIFE INS. CO. OF HART-FORD, CONN.**

District Court, S. D. Texas, at Houston.
May 5, 1928.

No. 979.

1. **Insurance** ⬄531—**Insured, employed in supervisory capacity, held not to have "changed occupation" to common laborer, by assisting in putting out fire.**

Insured, employed as general supervisor over production department of oil company, *held* not to have "changed his occupation," within provision of policy reducing indemnity, to that of a common laborer, by assisting to put out a fire which broke out in oil field.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Change.]

2. **Insurance** ⬄531—**Casual act of insured employed in supervisory capacity in assisting in putting out fire held not to constitute "change of occupation" reducing indemnity.**

Where insured employed by oil company in supervisory capacity assisted in putting out fire occurring in oil field, *held* that such action was merely casual and incidental and under an emergency, and did not constitute a change of occupation to that of common laborer, within provision of policy reducing indemnity in such case.

3. **Insurance** ⬄531—**Insured classified as "assistant technologist" and "oil well broker" "changed occupation" on becoming department head of oil company, holding supervisory position.**

Where insured was classified in policy as an "assistant technologist, office and traveling, not visiting mines," and as an "oil well broker, salesman, or supply dealer, office duties and traveling," his subsequent employment as department head of oil company, holding supervisory position combining both field and office work, with office work greatly predominating, constituted a change of occupation.

4. **Insurance** ⬄646(8)—**Insurer has burden of strictly proving facts showing change by insured to more hazardous occupation reducing indemnity.**

Where insurer claims that insured has changed occupation to one more hazardous, thus reducing indemnity, it is incumbent on insurer to strictly prove the facts making such provision operative.

5. **Insurance** ⬄531—**Provision of policy for reduction of indemnity on change to more hazardous occupation held inapplicable, where insured's occupation was not classified.**

Provision of policy reducing indemnity on change of occupation by insured to one classified as more hazardous *held* inapplicable, where insured's occupation as superintendent of production department of oil company was not classified in manual of insurer.

6. **Insurance** ⬄531—**Insured's change of occupation from that of "assistant technologist" and "oil well broker" to superintendent over production department of oil company held not change to more hazardous occupation.**

Change in occupation by insured from that classified as "assistant technologist" and "oil well broker, salesman, or supply dealer," to that of supervisor of production department of oil company, *held* not to one more hazardous, rendering provision for reduction in indemnity applicable.

At Law. Action by J. A. Elkins, administrator, against the Ætna Life Insurance Company of Hartford, Conn. Judgment for plaintiff.

Vinson, Elkins, Sweeton & Weems, of Houston, Tex. (C. M. Hightower and Geo. E. B. Peddy, both of Houston, Tex., of counsel), for plaintiff.

Fulbright, Crooker & Freeman, of Houston, Tex. (T. H. Cody and John H. Crooker, both of Houston, Tex., of counsel), for defendant.

HUTCHESON, District Judge. This is a suit on an accident policy containing a pro rata clause as follows:

"In the event the insured is injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such hazardous occupation."

The policy was issued to the decedent, Frederick B. Tough, in 1917, as a preferred risk; the insured giving his occupation as "assistant technologist, office and traveling, not visiting mines." The insurance company knew, through its agent, that the traveling duties of the occupation given by the insured required him to go into oil and gas fields, and in and about oil and gas wells. The company did not have the occupation given by Tough classified in its manual, but gave him a classification of "oil well broker, salesman, or supply dealer, office duties and traveling."

The insured continued in his employment and occupation with the Petroleum Division of the United States Bureau of Mines until the fall of 1925, at which time he accepted employment with the Humphreys Oil Corporation as superintendent of production department of the Humphreys Corporation. In this position he performed executive duties and had general supervision over the production department of the Humphreys Corporation.

The Humphreys Corporation was operating in some five or six oil fields in Texas, and

in each field a field superintendent was employed, whose duty it was to actually supervise and superintend all operations in and around the wells and on the leases located in each field. Tough, as superintendent of the production department, did not actually supervise the work in the field, but supervised the field superintendents, who in turn supervised and superintended field operations.

On October 24, 1926, a fire broke out in the Sour Lake oil field, which was one of the fields in which the Humphreys Corporation was operating. Tough and other officers of the company went to said oil field, and, while engaged in doing any and all things possible to preserve the properties of the company, he was killed by the explosion of a pipe at a point some 200 feet from the nearest well. At the time of the explosion which resulted in his death, the deceased had a hoe in his hand, and was attempting to put out a fire which was burning a stump located in the field near the pipe which exploded. Plaintiff sues for the face of the policy.

Defendant contends that under the pro rata clause plaintiff cannot recover the face, but must recover less, that he had changed his occupation to one classified by the company as more hazardous, or that he was injured "while he was doing an act pertaining to an occupation classified by the company as more hazardous than that stated in the policy."

Upon the conclusion of the evidence, both plaintiff and defendant moved for an instructed verdict, whereupon the court discharged the jury, and, taking the case under consideration, received arguments and briefs.

Upon the points involved, defendant's position is:

(1) That the deceased met his death while doing an act or thing pertaining to the occupation of operative or laborer at oil wells, not otherwise classified; in short, that he was injured while working as a common laborer; that therefore his recovery should be not $10,000, but $2,777.77.

(2) That, if wrong in this, his recovery should be $5,263.15, because they say he had changed his occupation from the one stated in the policy to an occupation classified by the defendant as "superintendent of oil wells."

Or (3) that he was entitled to that same sum of $5,263.15 because he had changed his occupation to one classified as more hazardous, to wit, "an oil well operator or producer, superintending only."

[1] I think the first contention wholly without merit, both upon reason and by the overwhelming weight of authority. Smith v. Massachusetts Bonding & Insurance Co., 179 N. C. 489, 102 S. E. 887; Arneberg v. Continental Casualty Co., 178 Wis. 428, 190 N. W. 97, 29 A. L. R. 93.

Apart from the rule that policies must be construed most strongly against the company, I think as a matter of common justice and fairness it is most unreasonable to say that a person employed in a supervisory capacity passes out of his occupation and becomes a laborer merely because, in an emergency, he puts his brains to work directly by his own hands, instead of by orders through the hands of another, and I think under the evidence in this case that what Tough did was as much in the line of his duties as an officer and agent of the company, as such work, if done by a laborer, would have been in line with his.

[2] If mistaken in this view of the facts, however, it is yet plain that the deceased was not actually engaged in the occupation of a common laborer, or doing any act or thing pertaining to that as an occupation, but that what he did was merely casual and incidental, and under an emergency, so that, for a much stronger reason, the cases holding that the clause invoked by defendant does not apply to a mere casual act apply here. Zantow v. Old Line Accident Ins. Co., 104 Neb. 655, 178 N. W. 507; Gottredson v. German Commercial Accident Co. (C. C. A.) 218 F. 582, L. R. A. 1915D, 312.

I therefore reject as wholly untenable defendant's suggestion that plaintiff's recovery should be on the basis of a common laborer.

It remains to consider only its second ground, that the deceased had changed his occupation to one classified as more hazardous, and that the administrator can recover only $5,263.15.

[3] On the trial plaintiff contended with great vigor that there had been no change of occupation. Defendant asserted that there had been, and I think it clear that the defendant is right in this contention.

At the time of decedent's death, he was neither an "assistant technologist, office and traveling, not visiting mines," as he described himself when the policy was issued, nor "an oil well broker, salesman, or supply dealer, office duties and traveling," as the policy described him. He was a department head of the Humphreys Corporation, receiving a salary of $10,000, holding a supervisory position which combined both field and office work, with the office work greatly predominating, and field work, in the sense of actual direction and immediate supervision, almost

entirely absent. To say that such a position is the same as either of those mentioned in the policy, as plaintiff contends, is unreasonable.

[4, 5] It is not enough, however, for the defendant to show that the employment is changed from that mentioned in the policy. It must also show that the changed employment was one classified by them as more hazardous. Defendant recognizes this obligation, and has endeavored to show that the deceased was either an oil well operator or producer, or an oil well superintendent. The evidence overwhelmingly establishes that he was not an oil well superintendent, as that term is used in the oil business.

If effect is given to the defendant's contention, and deceased is classified as an oil well superintendent, it would do violence to the evidence, and would result in having the tail wag the dog, since the smallest part of his duties are those having to do with the superintendence around oil wells, and these are not concerned with direct superintendence of the wells, but only with superintendence of the superintendents.

Defendant makes a better out upon its claim that the deceased was an oil well operator or producer, superintending only, in that the activities of the deceased embraced some of the activities of such a one, and, if the defendant could make its case, as it seems to think it can, by a showing that an oil well operator or producer, superintending only, would do most of the things which the deceased as the head of the production department of the Humphreys Oil Corporation was charged with doing, it might be well with it, but I think the law is otherwise; for where it is sought to rewrite a contract through the invocation of such a clause, it is incumbent upon the defendant to strictly prove the facts making the clause operative. These facts are (1) that the decedent had changed his occupation from the one which he had when the policy was written; and (2) that he changed to an occupation classified by the company as more hazardous as to risk.

Here the defendant has established the fact of change of occupation, but it has failed to show that the deceased was engaged in an occupation classified in its manual as more hazardous. In short, while I agree with defendant that it is not necessary for it to show that the occupation which the deceased was following at the time of his decease was actually more hazardous than the one in which he was first written, and that it was sufficient for them to show that the occupation he was engaged in was by the company classified as more hazardous, I find that the defendant's manual contains no classification which embraces the deceased's occupation, and that therefore their pro rata clause is not operative.

[6] While in the view of the law which I have taken, that the company's classification as to, and not the fact of, hazard is controlling, it is not necessary to make a finding on this point, yet, in view of the plaintiff's insistence upon the point that the question of fact whether plaintiff's occupation was more hazardous than the one in which he was written is material, I find that the evidence establishes as a fact that the occupation to which the deceased had changed was not in fact more hazardous than the one in which he was actually engaged, with the knowledge of the company, at the time the policy was written.

Believing, as I do, that the pro rate clause has never been operative, it follows that plaintiff should have judgment upon the policy as written for the full amount.