## SLOAN v. INDEMNITY INS. CO. OF NORTH AMERICA.
### No. 58.

District Court, D. Maryland.
July 6, 1933.

William A. Gunter, of Cumberland, Md., for plaintiff.

Walter C. Capper, of Cumberland, Md., for defendant.

CHESNUT, District Judge.

This case was tried at Cumberland at the last May Term of court and resulted in a verdict for the plaintiff for $20,500 in a suit upon two accident insurance policies, being the full amount (without interest) claimed by the plaintiff as payable thereunder for the loss of one eye by accidental means. The defendant duly filed a motion for a new trial and counsel has submitted a comprehensive brief in support of the motion.

The points urged in support of the motion are (1) that the court should have directed a verdict for the defendant on the ground of false answers by the plaintiff in the written applications attached to the policies, and (2) that if the plaintiff was entitled to recovery at all the amount of recovery should have been limited to $500 or, in the alternative, to $3750. Requested instructions to this effect were duly presented at the trial and were overruled, but the several defences were submitted to the jury for their determination of the facts in accordance with the applicable law as contained in the oral charge.

The most important point in the case involves the construction and application of a particular clause in the insurance policies which, so far as I am advised, has not heretofore been dealt with in any opinion in this Circuit or in the Court of Appeals of Maryland. It is the clause which provides for a reduction in the amount of insurance in the event that the insured changes his occupation during the life of the policy to one more hazardous, *"or while he is doing any act or thing pertaining to any occupation so classified."* It is the contention of the defendant that the uncontradicted evidence in the case shows that the accident to the plaintiff occurred while he was doing an act pertaining

to an occupation more hazardous than that described in the application for the insurance policies, to wit, general manager of a glass manufacturing business with office, executive and travelling duties, the accident having occurred while the plaintiff, in a business emergency due to the necessity of prompt forwarding of certain sample table glasses to a prospective customer and in the absence of the regularly employed glass polisher, was himself engaged in polishing glasses by dipping them into an acid, some of which splashed up into his eye, necessitating its removal. The defendant contended that the polishing of glassware was an occupation more hazardous than that of a general manager of a glass plant with office, executive and travelling duties and that (a) the plaintiff's accident occurred in a more hazardous occupation than that insured, to which the plaintiff had changed after the issuance of the policies, or (b) at least, if the plaintiff had not changed his occupation, the accident occurred while he was doing an act pertaining to a more hazardous occupation, as classified by the defendant's manual of rates and risks which provided in effect that the maximum amount of insurance for a glass polisher was, in this case, limited to $500 for the injury sustained. As a further alternative the defendant contended that if the limit of liability under the policy was not $500 for the reason stated, then the maximum limit recoverable in this case for the particular accident was $3750, the limit of the amount payable under the defendant's manual to a person injured while acting as a *superintendent* of a glass works as distinguished from a *general manager*.

There was evidence in the case on behalf of the plaintiff tending to show that the occasional polishing of glass by the plaintiff was *within the scope of his duties and activities as general manager of the glass manufacturing business;* and while the plaintiff did not habitually or customarily personally perform this manual labor, yet, as general manager of the factory and business it was necessary for him to be personally familiar with how the work should be properly done and very occasionally, possibly five or six times a year, he would in an emergency situation in the absence of the regular glass polisher or his substitute or for their better instruction, polish a few glasses himself. There was also evidence that the action of the plaintiff in this particular case was due to an emergency in that a certain prospective customer had ordered two sample glasses to be delivered not later than a named time; and that the plaintiff had secured this order on a travelling trip and on his return had given instructions for the manufacture of the samples and had then gone on another trip, and on his return from the latter, found the glasses on his desk but only in the "gray" and not polished state. In order to have the glasses delivered by the specified time, the glass polisher having left the factory for the day, it was necessary for the plaintiff, who was himself familiar with the process, to polish the glasses that evening; and the accident occurred while he was so doing.

The question of law thus presented was whether an accident so occurring from an act within the general scope of the duties of a general manager, if so found by the jury, was within the coverage of the policies as written with the amounts therein specified, or whether it fell within the exception mentioned in the policies requiring a reduced amount because the act, although within the duties of a general manager as an occasional or sporadic occurrence, was also an act pertaining to the habitual occupation of a glass polisher or, in the alternative, that of a superintendent of a factory, both risks classified as more hazardous by the defendant's rate manual. The point being a novel one in this jurisdiction, such examination of available authorities was made as opportunity afforded during the trial. The conclusion then reached was that if the jury found as a fact that the act was within the duties of a general manager as specified in the policies, the plaintiff was entitled to recover without reduction in amount. The question of fact was thus left to the jury under appropriate instruction of law to that effect. The jury's verdict established that the particular act was within the scope of the duties of a general manager in this particular case.

After study of the carefully prepared brief of counsel for the defendant and a further and more deliberate study of the authorities, I am confirmed in the view of the law announced in the charge to the jury. As the particular point has apparently not heretofore been passed upon in Maryland, or in this Fourth Circuit, a brief reference to the authorities may be helpful.

The authorities dealing with this particular clause of the modern accident insurance policy are annotated in 22 A. L. R. 780, and 26 A. L. R. 123. It will be noted that the policy provides for a reduction in the amount of the insurance in two contingencies, (1) where the occupation has been changed to a

more hazardous one and (2) where the accident results from doing "any act or thing pertaining to a more hazardous occupation." In the earlier forms of accident policies the exception was generally limited to a mere change in the occupation. As so worded the judicial decisions generally took the view that the limitation did not apply in the case of an accident resulting from an act pertaining to a more hazardous occupation if the latter was merely incidental or occasional and not as a result of a change in general occupation. And it is said that this tendency of judicial decision caused the insurers very generally to add the second clause of limitation above mentioned. See statement to that effect in Ogilvie v. Ætna Life Insurance Co., 189 Cal. 406, 209 P. 26, 30, 26 A. L. R. 122, where the Court said that the particular provision was "embodied in defendant's policies in response to the suggestion found in the opinion in the Berliner Case" (Berliner v. Travelers' Ins. Co., 121 Cal. 458, 53 P. 918, 41 L. R. A. 467, 66 Am. St. Rep. 49), "of a means by which the insurer might have avoided a result which there followed." That suggestion was in the following language: "If the company intended to say to the assured that if he did any act which did not strictly belong to his own occupation, but was embraced more properly in some other business, and if thereby any harm to him accidentally resulted, that in such event he could claim nothing under his policy, it was easy for them to do so in plain language." In a prefatory note in the annotation in 22 A. L. R. 781, it is said by the author, referring to the older form of policies, "under which provisions the conclusion was generally reached that the classification intended by these provisions was one of occupation, and not of particular acts or exposures, and that consequently the fact that the insured occasionally performed acts pertaining to a more hazardous occupation did not have the effect of reducing the amount of the recovery in case of an injury sustained while he was performing such acts." And in the same note in referring to the annotated judicial decisions which deal with the policy in its later form, that is, the clause for reduction of liability in cases of "any act or thing pertaining to a more hazardous occupation" it is said: "It will be observed from the cases that some of the decisions depend upon the conclusion that the act which the insured was doing did not pertain to another occupation, *while others are based on the theory that the act which the insured was doing was one pertaining to his occupation as well as to another*, as, for example, where a foreman was injured while illustrating to an employee how his work should be done; and, in others, the view is adopted that the classification intended by the provisions related to a vocation, and not to an occasional act aside from the insured's usual business."

In my opinion the principle applied in the cases referred to in the above underscoring, which I have supplied, is applicable to this case and properly made it a jury issue on the particular point.

This principle was applied to a somewhat similar factual situation by the Circuit Court of Appeals for the 6th Circuit in Gotfredson v. German Commercial Accident Co., 218 F. 582, 585, L. R. A. 1915D, 312, where the court said: "It is not too much to say that the parties here possessed the common knowledge that is derived from observation and experience respecting the occasional and unexpected necessities which exact of men, whose occupations are not regarded as comprising manual labor, the doing of an act which in a literal sense may be called manual labor. It is hardly conceivable that the policy would ever have been written and received upon any other understanding. * * * To construe the fifteenth clause so as to preclude the insured from doing an isolated act, such as the one here involved, would in effect be to prevent an assured from incurring such dangers as are essentially incident to the whole business comprised in his occupation. It might well be conceded that in such circumstances an employee in a particular department, say an insured bookkeeper, could not rightfully have operated the elevator even in an emergency; but it would by no means follow that the managing proprietor could not have done so." This case is a leading one, at least in the federal courts. Its authority was re-affirmed by the same court in Union Indemnity Co. v. Acord, 48 F.(2d) 1084. It was cited with approval by the Circuit Court of Appeals for the 9th Circuit in Reliance Life Insurance Co. v. Swanson, 11 F.(2d) 709, 710, and again in Schwartz v. Northern Life Insurance Co., 25 F.(2d) 555, 560, and also by the District Court of Texas in Elkins v. Ætna Life Ins. Co., 26 F.(2d) 277, 278.

The same principle is applied by the North Carolina Supreme Court in a well reasoned opinion in Smith v. Massachusetts Bonding & Ins. Co., 179 N. C. 489, 102 S. E. 887, 888, where it was said: "We do not construe the expression 'or while doing an act or thing pertaining to any occupation so classed' as more hazardous, to mean that, if the injury is caused by the doing of an act within the

line or scope of the insured's employment, if hazardous, he is to be paid only the diminished amount of insurance, if it also be an act which pertains to a more hazardous business, but as meaning, at most, that if he does a more hazardous act of another occupation, not pertaining to his own, the payment to him shall be reduced as specified. * * * Any other construction would make the policy a deception and a snare. The one we adopt is a reasonable interpretation of the language used and the only admissible one. Under the other construction, the company would be saying to the insured: We accept your risk as a supervisor and overseer, but if you do a certain act, which is essential to the proper and full performance of your duties to your employer, you must forfeit the larger part of your insurance." The same principle was also applied in Maine in the case of Thorne v. Casualty Company of America, 106 Me. 274, 76 A. 1106; and in Nebraska in Redmond v. United States Health & Accident Insurance Company, 96 Neb. 744, 148 N. W. 913, although the latter case perhaps goes farther in its application of the construction of the policy provision than is required in the present case. See, also, Eggenberger v. Guarantee Mutual Accident Ass'n (C. C.) 41 F. 172, and Zantow v. Old Line Accident Ins. Co., 104 Neb. 655, 178 N. W. 507.

The numerous cases cited by defendant's counsel are distinguishable. Indeed I have not noted any case, either state or federal, which clearly rejects the principle above discussed. The authorities cited by defendant's counsel do, I think, support, by the weight of authority, the conclusion that the policy provision is effective in reducing the amount of recovery where the act in question was entirely outside of the insured's duties as described in the policy although the particular act pertaining to a more hazardous occupation was merely an isolated or sporadic act and not incident to a changed occupation. Some authorities have taken a contrary view, as for instance, Holiday v. American Mutual Acci. Ass'n, 103 Iowa, 178, 72 N. W. 448, 64 Am. St. Rep. 170.

So far as I have noted, very few if any of the cases cited by defendant's counsel deal with a situation such as we have here where the act causing the injury was within the general duties of the insured's occupation as described in the policy, although only an occasional one. Ogilvie v. Ætna Life Ins. Co., 189 Cal. 406, 209 P. 26, 29, 26 A. L. R. 116, is the leading authority relied on by the defendant. The distinction between the present case and the Ogilvie case is clear. In the latter the act causing the injury was not an incident of the insured's occupation. This appears in the following quotation from the court's opinion: "The defendant conceded at the trial that the assured had not changed his occupation, but its contention was that the manual labor of plowing is not incident to the occupation of 'real estate and investments,' but is an act incident to the occupation of 'farmer,' 'farm laborer,' and 'common laborer,' each of which was classified by it as 'hazardous.'" And cases where the assured is really engaged in two occupations, one covered by the policy and one a more hazardous classification, and where the act causing the injury results from the latter, are also distinguishable. See annotation in 55 A. L. R. 1057.

In Richards on Insurance (4th Ed.) § 396, in discussing the exceptions of hazardous employment in the accident policy, it is said: "Where a person is insured as engaged in a certain specified occupation, he may do whatever customarily appertains to such an occupation, including acts that may be forbidden by general restrictions of the policy." See, also, cases reviewed in Couch, Cyclopedia of Insurance Law, vol. 5, § 1139.

It seems unnecessary to discuss the defendant's requested instructions for a directed verdict based on the contention that the uncontradicted evidence showed that the plaintiff was injured in doing an act "after having changed his occupation to one classified by the company as more hazardous" than that stated in the policies. This issue was left to the jury for determination on the facts as to whether there had been such a change in occupation. This is the usual and required course where there is substantial evidence in support of the plaintiff's case, as there was here. Garrison v. United States (C. C. A. 4) 62 F.(2d) 41, 42; Federal Life Ins. Co. v. Bailey (C. C. A. 8) 13 F.(2d) 113, 114.

I think it sufficient to comment briefly only on the defendant's contention that an absolute verdict should have been directed for the defendant on the ground of false answers in the applications. This was an affirmative defence as to which the defendant had the burden of proof. Ordinarily it is a question for the jury. The defendant therefore had the burden of establishing that the answers were false and insufficient and given in bad faith or, if in good faith, were nevertheless false or insufficient and material. And materiality is itself in insurance law ordinarily a question of fact for the jury. Certainly there was in this case no basis for a directed

verdict in favor of the defendant on the issue as to the plaintiff's good faith in making the answers; but it is contended by the defendant that the uncontradicted evidence showed that the information as to the plaintiff's duties was materially defective. I cannot reach that conclusion. Here the defendant's principal argument is that the plaintiff's duties as described by him classified him according to the defendant's manual as a factory superintendent rather than as a general manager. But the terms "manager," "general manager" and "superintendent" have no absolute and precise meaning apart from the nature and customs of the business to which they pertain. They are to some extent at least relative terms. To determine their relation to any particular business resort is necessary to the testimony to show the size, character and nature and customs of the business. Here the testimony showed that the particular business was a glass factory employing 200 to 300 men; that the plaintiff and his brother were the proprietors and general managers of the business and that probably the larger part of the plaintiff's personal attention was given to travel in the solicitation of customers, but that when at the plant he customarily visited the several departments of the plant at some time during each day and occasionally made suggestions or gave instructions to the foreman or employees. In one sense it might be said that when at the plant he had general supervisory duty over the whole of the business. The position which he occupied, however, was called "general manager" and I do not think it can be said as a matter of law from the uncontradicted testimony that this designation of his office and duties was clearly inappropriate.

Nor should his answers in the applications for the policies of "office and travelling" and "executive duties and travelling" to the question "state fully your duties" be construed as excluding any and all activities other than those physically performed in an office or while travelling. The answer must fairly be considered in relation to the other answers in the application which told the Insurance Company that the business of the applicant was that of a manufacturer of glass and that he was the general manager of the business. While the question was "State the duties of your occupation fully," it may be noted that the answer was not "office and travelling *only*" or "executive duties and travelling *only*." It is true that literally the question, including the word "fully," is susceptible of requiring an answer that would describe with great minutuae and detail every

act no matter how minor and casual, performed by the plaintiff in his occupation. But reference to the original application attached to the policy shows that no such minute detail could have been reasonably intended in view of the limitation of physical space afforded for the answers. Nor should we entirely disregard the well known method of business in writing these accident policies. Indeed the testimony in the case to some extent indicates the practice. They are written locally by an agent and the amount of detailed information required in the application for an accident policy is generally very greatly less than the much more comprehensive and detailed examination and answers required in the life insurance policy. It is suggested by the defendant that there was ample space provided for the insured to have personally written in, or request the agent to write in, a short phrase to the effect that the plaintiff was a superintendent of the business in addition to office, executive and travelling duties. But there is nothing in this case to indicate that either the plaintiff or the defendant's agent made any distinction between the term "general manager" and "superintendent" or that the plaintiff knew that a general manager was classified differently from that of a superintendent in the defendant's rate manual. Even, therefore, if the term superintendent were properly applicable to the plaintiff's duties (a conclusion which was not inescapable under the testimony) there is nothing to show that the plaintiff knew this. Furthermore and perhaps more importantly, the defendant was affirmatively advised by the plaintiff's answers that he was the general manager of a glass manufacturing business, which would reasonably imply that he had incidental duties more extensive than those necessarily physically performed in the office and while travelling. (In the later policy issued by the same company, the plaintiff's answer to this question was "executive duties and travelling." Here again the term "executive" is of no certain and definite meaning apart from the nature and customs of the particular business). If the defendant had desired more particular and precise information as to the details of the plaintiff's duties for his proper classification under its rate manual which was in its possession and not known to him, further and more particular questions could have been submitted before the acceptance of the risk.

The issue here involved was fully submitted to the jury. In my opinion it could not properly have been treated otherwise. It was so held in Business Men's Assur. Co. of Amer-

ica v. Campbell (C. C. A. 8) 6 F.(2d) 540; Id. (C. C. A.) 18 F.(2d) 223, in a case involving a quite similar situation. See, also, Redmond v. United States Health & Accident Ins. Co., 96 Neb. 744, 148 N. W. 913; Warren v. Globe Indemnity Co., 170 Wis. 600, 176 N. W. 73.

Other formal reasons contained in the motion for a new trial have not been insisted on in the defendant's brief. I see no occasion to disturb the verdict of the jury in this case which I think was based on substantial and indeed ample evidence.