### INDEMNITY INS. CO. OF NORTH AMERICA v. SLOAN.

### No. 3553.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1934.

Walter C. Capper, of Cumberland, Md. (Edward M. Biddle and Roscoe R. Koch, both of Philadelphia, Pa., on the brief), for appellant.

William A. Gunter and Charles Z. Heskett, both of Cumberland, Md. (J. Philip Roman, of Cumberland, Md., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and WAY, District Judge.

SOPER, Circuit Judge.

Dixon C. Sloan, the insured in this case, lost an eye accidentally while polishing glass in a glassworks at Lonaconing, Md., and brought a suit, later removed to the District Court, against the Indemnity Insurance Company of North America on two policies of accident insurance, claiming the sum of $10,000 under one of said policies, and $10,500 under the other. The insurance company denied any liability, but defended chiefly on the ground that its liability on both policies was limited to the sum of $500 because the accident occurred while the insured was doing an act pertaining to the polishing of glass, a more hazardous occupation than that stated in the applications for the policies. The District Judge did not sustain this interpretation of the policies (see his opinion on motion for new trial, 4 F. Supp. 148), but submitted certain questions of fact to the jury which found a verdict for the plaintiff on the two policies in the aggregate sum of $20,500. From the judgment on this verdict, this appeal has been taken.

The policies were issued in 1924 and 1927, respectively, to insure the holder against the effect of bodily injuries sustained through accidental means, as limited by certain provisions, one of which is the subject of this controversy. It is set out with italicizing of the clauses whose meaning is in dispute:

"This policy * * * contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates in the event that the insured is injured *after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified,* * * * in which event the company will

pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the company for such more hazardous occupation."

The insured in his applications for the policies stated that he was "vice president and general manager" of the Potomac Glass Company at Cumberland, Md., whose business was that of glass manufacturing, with duties described in the application for the first policy as "office and traveling," and in the second as "executive duties and traveling." The evidence showed that, when the policies were taken out, the corporation employed about 350 men in its glassworks, and that the insured was in fact the vice president and general manager of the business. He had the management of every department of the factory in which cutting, etching, blowing, gold coloring, finishing, and packing was done. When he was at home he visited every working department daily, walking through to see that the work was being properly done and to give necessary advice and instructions. There was also a foreman in charge of each department who was responsible therefor. The insured was thoroughly familiar with the business, and was personally able, through long experience, to do any of the work required of the men. A large part of his time was spent in traveling, visiting the larger customers, such as Montgomery-Ward, Sears-Roebuck, and the bigger department stores and syndicates. On April 6, 1929, the plant was destroyed by fire, and later the corporation was dissolved. In November, 1929, the insured and his brother established a glass manufacturing business at the nearby town of Lonaconing, Md., under the firm name of Sloan Bros. They also formed a corporation, known as the Lonaconing Cut Glass Company, which operated a plant nearby in the same town. The two businesses were related; certain operations in the course of manufacture being performed at one plant and certain at the other. The number of employees of both plants was about 350. The duties of the insured in connection with these plants were the same as he had performed at the Cumberland Glass Works. After the business was established in Lonaconing, and therefore after the issuance of the policies, the practice of polishing glass by the use of acids was introduced. The insured himself learned the process and testified that on two or three occasions he did the work of polishing samples of goods which had to be shipped out at night. Evidence was offered on behalf of the defendant tending to show that the work of polishing was done more frequently by the insured, but even this evidence showed that he performed the operations himself only on exceptional occasions in order to instruct the regular polisher; and we must accept as an established fact that glass polishing was only an occasional and not a habitual duty of the insured, since the jury were told that, unless they found such to be the case, they must bring in a verdict against him.

The accident happened on January 5, 1932, about 7 p. m. when the insured returned to the plant of Sloan Bros. after supper and found two samples of glasswork on his desk which were intended for delivery to Sears-Roebuck Company in Chicago. He had previously visited that city in the course of his activities as a traveling salesman, and had been requested to deliver certain samples not later than January 10, 1932, for inspection and comparison by the buyers. It was important that prompt delivery of the samples be made; but the insured observed that they had not yet been polished, and, desiring to send them to Chicago by mail that evening, he undertook, in the absence of the regular glass polisher, to subject them to the polishing process himself. In doing so, some acid accidentally splashed into his eye and destroyed the sight.

The most important question of law in the case, arising on these facts, is whether, within the meaning of the quoted provision of the policies, the insured was injured after having changed his occupation to one classified as more hazardous than stated in the policy, or while he was doing an act pertaining to an occupation so classified. It is contended (1) that the insured was injured after he had changed his occupation, because glass polishing was not practiced by him until after the issuance of the policies; and (2) that he was injured while doing an act pertaining to the occupation of a glass polisher. Hence it is insisted that the jury should have been instructed that the insured could recover only $500 in all, the total liability of the company to one who loses an eye while engaged in that occupation.

As to the first contention, the District Judge suggested to the jury, in an advisory way, that the testimony was consistent with the idea that the insured did not habitually follow the occupation of glass polishing, and had not changed his occupation from that of general manager, but nevertheless left the question of change of occupation to be decided by the jury as an issue of fact. The defendant has no ground for complaint of this

instruction, for, if anything, it was too favorable, since it is clear from the evidence that the insured was still performing the duties stated in his applications. Moreover, it cannot be said that the occupation of the insured was changed merely because in the glass factory, where many activities were carried on, a new process of glass polishing was introduced under his supervision after the policies had been issued.

On the second contention, the District Judge in his instructions to the jury explained that it was the purpose and effect of the restrictive clauses to cut down the liability of the company in the case of a person regularly engaged in one occupation, who, without changing his occupation, should be injured in doing an act not pertaining to that occupation but to another of a more hazardous nature. The jury were told, in substance, that, if they found from the evidence that the stated occupation of the insured included and required, as an incident thereof, the occasional polishing of glass in an emergency, and if they further found that the insured was injured in so doing, he was entitled to recover the amounts claimed, although glass polishing was a more hazardous occupation than his own and was habitually done by a regular glass polisher employed for the purpose.

It is especially emphasized on behalf of the company that the clauses are in the alternative, so that liability is restricted not only when the insured changes his occupation, but also when, without change of occupation, he steps into a more hazardous occupation for a short time and is injured while doing some act pertaining thereto. The language is susceptible of this interpretation, and may be literally applied to the facts of this case, for it is not disputed that the insured was hurt while polishing glass, or that this act pertained to an occupation classified as more dangerous than that of general manager. However, the construction of the phrase is not free from ambiguity when occupations are considered, which, like that of the insured in this case, consist most of the time of activities free from great risk of danger, but occasionally include activities habitually performed by others in a more dangerous field; in short, occupations which overlap or fall into two classifications of different degrees of danger. In such a contingency, the question arises whether there is a reduction of the liability of the company to an injured man who has not stepped outside his calling, but is performing an act of the more dangerous kind recognized as part of his exceptional or occasional duties. When cases of this kind have reached the courts, the ambiguity of the clause has been noticed, and in accordance with the rule usually applied to the construction of insurance policies, the doubt has been resolved in favor of the insured.

The history of the clauses under consideration is well stated in Ebeling v. Bankers' Casualty Co., 61 Mont. 58, 62, 201 P. 284, 22 A. L. R. 777:

"The earlier accident policies provided only for diminished liability in the event the insured, at the time of his injury, had changed his occupation to one classified as more hazardous, and the courts held generally that the term 'changed' was employed in the sense of substitution, that the performance of an isolated act pertaining to a more hazardous occupation did not constitute a change of occupation, and that the insurance company could not claim the right to have the indemnity diminished by reason of the fact that the insured was injured while in the performance of such isolated act. The leading cases so holding are Stone's Adm'rs v. United States Casualty Co., 34 N. J. Law, 371; North American, etc., Ins. Co. v. Burroughs, 69 Pa. 43, 8 Am. Rep. 212; Baldwin v. Fraternal Acc. Ass'n, 21 Misc. 124, 46 N. Y. S. 1016; Id. 29 App. Div. 627, 52 N. Y. S. 1136, affirmed 159 N. Y. 561, 54 N. E. 1089; Berliner v. Travelers' Ins. Co., 121 Cal. 458, 66 Am. St. Rep. 49, 41 L. R. A. 467, 53 P. 918. Later the courts held that, if the act being done at the time the injury was received was one which fairly pertained to the regular employment of the insured, it could not be held that he had changed his occupation by reason of the fact that the act pertained, also, to a more hazardous employment. Thorne v. Casualty Co., 106 Me. 274, 76 A. 1106.[1] Finally the courts were called on to consider policies containing the provisions quoted above, and in Smith v. Massachusetts Bonding & Ins. Co., 179 N. C. 489, 102 S. E. 887, it was held that, if the act being done by the insured at the time of his injury was one pertaining directly to his own occupation, the liability of the insuring company would not be diminished by reason of the fact that the act pertained also to a more hazardous undertaking."

The earlier policies did not contain the restrictive clauses in the alternative. Those first cited in the foregoing quotation reduced the liability in case the insured changed to a more hazardous occupation, while the policy

---

[1] See, also, Miller v. Missouri State L. Ins. Co., 168 Mo. App. 330, 153 S. W. 1080.

in Thorne v. Casualty Company limited recovery if the insured should be injured while at work pertaining to such an employment. Separately considered, neither clause was held to be applicable to a case like the present. It was said that "if the company intended to say to the assured that if he did any act which did not strictly belong to his own occupation, but was embraced more properly in some other business, and if thereby any harm to him accidentally resulted, then in such event he could claim nothing under his policy, it was easy for them to do so in plain language." Stone's Adm'rs v. United States Casualty Co., 34 N. J. Law, 371.

It is now argued that the insertion of both clauses in the same policy shows a clear intent to cover even casual or exceptional duties of an occupation, if they involve the performance of acts belonging to a more dangerous pursuit. But the decisions of the courts have been the same; for it has been thought that the terms of the policies are still obscure, and that it is still pertinent to inquire why plain and unmistakable language was not used so that the insured would understand that the more hazardous acts of his regular occupation were not fully covered by his policy. In Gotfredson v. German Commercial Acc. Co. (C. C. A.) 218 F. 582, L. R. A. 1915D, 312, the insured was a member of a firm engaged in trucking merchandise for railroad companies and wholesale houses in Detroit, and stated in his application that he was the proprietor of the business and performed no manual labor. He was fatally injured while operating an elevator during the absence of the regular operator in an emergency which arose when a removal of effects incident to a change of location was being carried on after business hours. The court said (218 F. 585, 586):

"Associating the words 'trucking business' with the words 'proprietor, no manual labor,' and considering their apparent intent, it would seem that their natural and necessary meaning would include mere casual acts, even though the acts involve temporary manual labor. It must be kept in mind that these words were used to describe the occupation, the regular business, of the applicant. Occupation is a very comprehensive term. It compasses the incidental as well as the main requirements of one's vocation, calling, business. It is defined by lexicographers to be 'that which occupies or engages the time and attention; the principal business of one's life; vocation; employment; calling; trade.' And see Everson v. General Accid., etc., Assur. Corp., 202 Mass. 169, 175, 88 N. E. 658; Union Mutual

Accident Ass'n v. Frohard, 134 Ill. 228, 234, 25 N. E. 642, 10 L. R. A. 383, 23 Am. St. Rep. 664.

"It is not too much to say that the parties here possessed the common knowledge that is derived from observation and experience respecting the occasional and unexpected necessities which exact of men, whose occupations are not regarded as comprising manual labor, the doing of an act which in a literal sense may be called manual labor. It is hardly conceivable that the policy would ever have been written and received upon any other understanding. * * *

"The company had classified occupations and assigned this assured to one of its classes; and now to construe the fifteenth clause so as to preclude the insured from doing an isolated act, such as the one here involved, would in effect be to prevent an assured from incurring such dangers as are essentially incident to the whole business comprised in his occupation."

In Smith v. Mass. Bonding & Ins. Co., 179 N. C. 489, 102 S. E. 887, 888, the insured, who stated in his application that he was a foreman and supervisor in the employ of a power company, having overseeing duties only, was killed by a fall from a tower which he ascended in order to instruct the workmen under his direction. The court said in part:

"We do not construe the expression 'or while doing an act or thing pertaining to any occupation so classed' as more hazardous, to mean that, if the injury is caused by the doing of an act within the line or scope of the insured's employment, if hazardous, he is to be paid only the diminished amount of insurance, if it also be an act which pertains to a more hazardous business, but as meaning, at most, that if he does a more hazardous act of another occupation, not pertaining to his own, the payment to him shall be reduced as specified. Cutting the wire would not be an act or thing more hazardous than his own occupation, as that was a part of his own duty as overseer, as we have shown, and therefore would not be embraced by the following language of the policy:

"'While doing an act or thing pertaining to any occupation so classed as more hazardous than that herein.'

"Any other construction would make the policy a deception and a snare. The one we adopt is a reasonable interpretation of the language used and the only admissible one. Under the other construction, the company would be saying to the insured: We accept your risk as a supervisor and overseer, but if you do a certain act, which is essential to the

proper and full performance of your duties to your employer, you must forfeit the larger part of your insurance."

See, also, Fidelity Health & Accident Co. v. Holbrook (Ind. App.) 169 N. E. 57, 170 N. E. 346; King v. Standard Acc. Ins. Co. (Mo. App.) 248 S. W. 984; Elkins v. Ætna Life Ins. Co. (D. C.) 26 F.(2d) 277.

█ In our view, these conclusions are well founded, and they fairly establish the rule that the clause, which reduces the liability of the insurer if an accident is suffered in the performance of an act pertaining to a more dangerous occupation, does not apply if the act also pertains to the occupation of the insured, not as an habitual or customary duty, but as one occasional and exceptional. The classification of the risk is not disturbed because it is common knowledge that occasional necessities require the performance of such duties as incidents of the stated occupation. Moreover, the exposure to the greater risk is exceptional and infrequent.

The appellant relies on a number of cases in which it was held that the liability of the company was limited, notwithstanding the fact that the insured had not changed his occupation but had merely engaged in the performance of an act pertaining to a more hazardous occupation; in other words, the clause under discussion was given the effect for which the appellant contends in this case. It appears, however, that in each one of them the act performed was not within the scope of the occupation stated in the policy but related solely to some other employment. Thus in Lane v. Gen. Acc. Ins. Co. (Tex. Civ. App.) 113 S. W. 324, Green v. Nat. Casualty Co., 87 Wash. 237, 151 P. 509, and Thomas v. Masons' Fraternal Acc. Ass'n, 64 App. Div. 22, 71 N. Y. S. 692, the insured, who were engaged in ordinary commercial occupations, were killed while hunting; in Ogilvie v. Ætna Life Ins. Co., 189 Cal. 406, 209 P. 26, 26 A. L. R. 116, the insured, engaged in real estate and investments, was injured while ploughing; in Loesch v. Union Casualty & Surety Co., 176 Mo. 654, 75 S. W. 621, 623, the insured, a "stock dealer, not working nor tending in transit" was killed while tending in transit; in Montgomery v. Continental Casualty Co., 131 La. 475, 59 So. 907, 908, the insured, a "draughtsman with office and traveling duties only," was injured while operating a press drill for recreation during lunch hour; in Ridgely v. Ætna L. Ins. Co., 160 App. Div. 719, 145 N. Y. S. 1075, 1076, "a financial writer and reporter" was killed in attempting to operate an airplane which he had built to rent out; in Goodell v. Northwestern Mut. Acc. Ass'n, 130 Wash. 55, 226 P. 266, 267, a "principal of schools" was injured while acting as "temporary forest guard"; in Tobin v. Nat. Casualty Co., 63 Cal. App. 578, 219 P. 482, 483, "a hotel keeper, office and supervising duties only" was injured while acting as "hotel keeper with general duties"; in Ebeling v. Bankers' Casualty Co., 61 Mont. 58, 201 P. 284, 22 A. L. R. 777, a "proprietor and meat cutter in shop" was killed while acting as "tender of live stock in transit"; in Cowley v. Mass. Protective Ass'n, 163 La. 1016, 113 So. 359, a "jeweler was injured while acting as volunteer fireman"; and in Emick v. National Travelers' Ben. Ass'n, 47 S. D. 530, 199 N. W. 595, an agricultural implement dealer, with duties excluding the handling of machinery, was injured while testing a corn binder.

█ The insurance company also contends that it was entitled to a peremptory instruction that the polishing of glass did not pertain, as an incident, to the occupation of the insured, particularly as he had stated in his applications that his duties as vice president and general manager consisted of executive or office duties and traveling. We think that in this respect there was a question for the jury upon the evidence. His testimony tended to show, as we have said, that he understood the art of polishing glass, that he occasionally supervised the work of polishing, and gave instructions about it, and that on exceptional occasions, in connection with his duties as a traveling salesman, he polished samples when they had to be gotten out at night. We do not think it can be said, as a matter of law, that the duties of a manager or traveling salesman may not properly include the casual or occasional performance of acts requiring manual skill which are usually done by a workman in a more hazardous occupation. The matter was properly left to the jury to determine upon the evidence whether the actions of the insured at the time of his injury fell within the scope of his stated duties.

██ Nor do we think, as the company contends in an alternative defense, that it was entitled to a peremptory instruction limiting recovery to the sum of $3,750 on the theory that the insured held the position of superintendent, an occupation classed as more hazardous than that of manager in the accident manual of the company. This contention is based on the performance of supervisory duties in the several departments of the works as above outlined, and also upon certain statements

228

contained in a claim filed by the insured with the State Industrial Accident Commission indicating that he occupied the position and did the work of an operative superintendent. The District Judge left the matter to the jury, with the comment, in substance, that the term "general manager" is not one of precise significance, but that its meaning with respect to the duties involved varies with the size and kind of business under consideration; and that the performance of supervisory duties by the insured in this case did not conclude the matter, but should be considered by the jury in determining whether the insured performed the duties of a general manager or merely those of a superintendent. No fault can be fairly ascribed to this instruction. The accident manual of the insurance company did not define the duties of a superintendent, nor those of a manager, save as one not superintending or working in a plant. In view of the great variety of ordinary business and manufacturing conditions, specific definitions drawing a precise line between the functions of the manager and of the superintendent of a factory were doubtless impracticable; but this very fact makes it particularly appropriate to apply the general rule of interpretation that every contract should be construed in the light of the surrounding circumstances. Williston on Contracts, vol. 2, §§ 618, 629. The daily visiting by an executive of the several departments of a factory, each under the control of a foreman, so as to see that the work is progressing smoothly, and to give instructions where necessary, and even the doing of an occasional act of manual labor, are acts which in themselves are not necessarily inconsistent with managerial duty and authority, and it would have been improper in this case to instruct the jury that the insured was merely a superintendent.

■ From these conclusions, it also follows that the defendant in the District Court was not entitled to a directed verdict, as it contends, on the ground that the insured made false statements in his application with intent to deceive, or false statements which materially affected the risk, when in answer to the question to state fully the duties of his occupation, he made the answers outlined above. The insurance company was given the full protection of the clause which provides that the policies shall be void if such false statements are made in the applications; for the District Judge instructed the jury, in substance, that the insured could recover nothing under the policies if they should find that his answers in the applications were

false in the manner described in that they did not fully and fairly show that his duties included a general superintendency of the plant. The jury were told that in determining this question, they should take into consideration what duties the general manager of a glass plant like the one in question would naturally be expected to perform and also the duties which the insured in fact performed, as well as the physical make-up of the applications and the limited size of the spaces for answers as indicating whether the insured was expected to give a minute description of his duties.

We have also examined the exceptions taken by the appellant to the rulings of the District Judge on the admission and rejection of evidence, and we find nothing that could have prejudiced its case.

The judgment is therefore affirmed.

