## CONYERS v. CLEVELAND et al.
### No. 4098.

Circuit Court of Appeals, Fourth Circuit.
Jan. 5, 1937.

196

Luther K. Brice and Benjamin O. Johnson, both of Spartanburg, S. C. (Harvey W. Johnson, of Spartanburg, S. C., on the brief), for appellant.

H. K. Osborne, of Spartanburg, S. C. (Osborne & Butler and Thomas B. Butler, all of Spartanburg, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

On August 17, 1931, the First National Bank and the American National Bank of Spartanburg, S. C., were duly consolidated with the approval of the Comptroller of the Currency under the name of the First National Bank of Spartanburg. Stockholders in the American National, for each share of stock held by them, were allotted 2½ shares in the consolidated bank; but the South Carolina State Bank, which owned 141 shares of the stock, refused its assent to the consolidation, and its stock was thereupon purchased by the consolidated bank pursuant to law (12 U.S.C.A. § 33). The stock so purchased was paid for by cashier's check of the consolidated bank for $10,500 on December 5, 1932; and the stock was carried by the bank upon its books as a cash item until its failure in July, 1932, except that on February 13, 1932, John W. Wingo purchased and paid for 10 of the shares at the price of $744.61, and on March 3, 1932, Alfred Moore purchased and paid for 10 other shares at the price of $744.62. These payments reduced the amount of the cash item to $9,010.78. After the failure of the bank, actions were instituted by its receiver to recover this amount from twelve of the seventeen directors, on the ground that they had purchased the stock as a joint undertaking on their part, using the funds of the bank to pay for it, and to recover a stock assessment from them on the theory that they were the owners of a corresponding amount of stock in the failed bank.

The cases were consolidated for hearing in the court below. At the conclusion of the evidence, both sides moved for a directed verdict, and the trial judge thereupon passed upon the issues and directed verdict for defendants. From judgment on this verdict the plaintiff has appealed as against only three of the directors sued, viz., H. M. Cleveland, president of the bank, John W. Wingo, its cashier, and Alfred Moore, conceding on the argument before us that there was no sufficient evidence presented as to the liability of the other directors. As both sides moved for a directed verdict, there was a waiver of jury trial; and the only question which arises with respect to this aspect of the case is whether there was substantial testimony to support the court's finding. Chisholm v. Gilmer (C.C.A.4th) 81 F.(2d) 120; Williams v. Vreeland, 250 U.S. 295, 39 S.Ct. 438, 63 L.Ed. 989, 3 A.L.R. 1038;

Beuttell v. Magone, 157 U.S. 154, 15 S.Ct. 566, 39 L.Ed. 654. This is the principal question presented by the appeal.

On behalf of plaintiff it was shown that the stock which was carried on the books of the bank as a cash item was counted towards a quorum and voted at the stockholders' meeting of December 31, 1931; that in a report to the state tax commission of that date no stock was shown as owned by the bank, but 353 shares were shown as belonging to "holding company"; and that in the published reports of the condition of the bank, and in the report to the Comptroller of the Currency, the stock was carried among the bank's cash items. In addition to this, there was testimony of one Leonard, who held the office of executive clerk of the bank, that defendant Cleveland had told him that the stock was bought for distribution among the directors, and that defendant Wingo had told him that the cash item was an obligation of the directors to be paid by them. One Rogers, a vice president, testified that Cleveland had told him that the directors were obligated on the cash item and would take it up, and that Wingo had said that it was their obligation and would be prorated among them. On March 22, 1932, the bank examiner commented on the cash item in his report as follows: "Bought of South Carolina National Bank for distribution among the directors of the bank. Original amount of purchase $10,500.00. Claim directors have agreed to take this stock." The examiner testified that at the time of making the report he read it to the directors, including Cleveland, Wingo, and Moore, and that Cleveland then stated in the presence of the other directors that "the directors would see that the item would be taken out and paid." There was testimony also to the effect that the report of the examiner was before the directors at a meeting held on May 14th and that this item of the report was discussed by them. Two letters of defendant Moore were put in evidence. The first, under date of March 1, 1932, was directed to Wingo as cashier of the bank and inclosed check for $744.61 "in payment of stock, my pro rata share, as agreed on at the last directors' meeting." The other, dated July 23, 1932, in response to a letter from the receiver to the directors demanding payment of the cash item, stated, "If you will refer to my letter of March 1, 1932, you will see that I paid what I was told as be-

ing my pro rata share at that time $744.-61."

This testimony, which standing alone and uncontradicted would certainly tend to establish a case against the three directors of at least an agreement to take a proportionate share of the stock, if not a joint undertaking such as was before the court in the case of Chisholm v. Gilmer, supra, was in part flatly contradicted by the defendants and in part explained in such way as not to be inconsistent with their contention that they had not purchased or agreed to purchase the stock. Their testimony was that they had not purchased the stock for themselves or had the bank to purchase it for them, but that it had been purchased by the bank itself because of repeated demands made by the South Carolina National Bank, which refused to consent to the consolidation; that appraisers had been appointed and the value of the stock agreed upon; and that the purchase had been made on regular resolution of the board of directors and in accordance with advice of counsel and the requirements of the statute. They contended, and offered testimony to show that the stock was carried as a cash item because an early sale of it was contemplated and because it was thought that this was a proper way to list the items among the bank's assets, and that public sale was not made within thirty days as required by statute (12 U.S. C.A. § 33) because shortly after the purchase of the stock there were many bank failures in South Carolina, including the failure of the Peoples State Bank with forty-four branches, and it was feared that an offering of the stock for sale at public auction would precipitate a run and probably result in the bank's failure.

The testimony showed without contradiction that the only proposal with respect to the directors' taking the stock was at a meeting held on February 12, 1932, when defendant Moore stated that it could not longer be carried as a cash item and proposed that the directors purchase it from the bank. The proposal contemplated that each of the directors take approximately 10 of the shares, but none of the other directors agreed to this proposal, several saying that they could not do so, and defendant Cleveland giving as the reason for his refusal that he had purchased $9,000 of new stock at the time of the merger. Defendant Moore testified that he purchased the 10 shares in accordance with his pro-

posal in the hope that other directors would follow his example, and defendant Wingo testified that he did likewise because as an officer of the bank he was trying to get it out of difficulties and thought that by purchasing stock he could influence other directors to do so. He stated that the truth as to what he told Leonard and Rogers with respect to the cash item was that it was stock wished off on the consolidated bank by the South Carolina State Bank, that the consolidated bank had to dispose of it, and that the best chance of doing this would be to get the directors to take it. Both he and Cleveland denied that they had ever told either Leonard or Rogers that the stock was purchased for the directors, or that the cash item was the liability of the directors and that they were going to take it up; and these two and others of the directors denied that any such statement was made to the bank examiner or that he was present at any meeting when any discussion of the matter was had. Some of the directors admitted discussing at the May 14th meeting, when the bank was in a critical condition, the item in the examiner's report to which we have referred, but testified that all of the directors present at that meeting protested the correctness of the statement in the examiner's report and disclaimed all liability with respect to the stock.

In addition to this direct denial of any agreement to take the stock, there was testimony of a number of circumstances strongly tending to negative any fraudulent conspiracy on the part of the directors to buy stock with the bank's money for their own use and benefit. Thus, prior to the consolidation, directors of the First National had put up a hundred thousand dollars to take doubtful and worthless paper out of the bank; and of this amount $20,000 had been put up by the defendant Cleveland for the estate of his father of which he was manager, $20,000 had been put up by the estate of his uncle, and $8,000 had been put up by the defendant Moore. The stock of the First National at the time of consolidation had been reduced from $500,000 to $250,000 and $62,000 of new stock had been sold at par, largely to the old stockholders, to get sufficient capital to keep the bank afloat. Defendant Cleveland became president first of the American National and later of the consolidated bank at the request of the directors of these banks in an effort to keep

them going. And the defendant Moore loaned the bank $100,000 to tide it over an emergency, on paper which was not eligible for discount with the Reconstruction Finance Corporation. There is no evidence of any irregularity in the handling of the affairs of the bank other than in connection with this stock, which the bank was required by law to purchase; and it was in evidence that the receiver had stated that the bank was one of the cleanest "as far as directors are concerned" that he had ever examined. Defendants contend with much force that directors who were using their best efforts and their private means to keep the bank afloat, and who had managed its affairs in such way as to win from the receiver the tribute that it was the cleanest bank he had ever examined, would hardly have been interested in purchasing for themselves a relatively small block of its stock and wrongfully using its funds for that purpose.

The question presented is one of fact, and we think that the conclusion reached by the learned trial judge was correct; but, whether correct or not, it is binding upon us, as it is unquestionably supported by ample testimony. The question at issue is not whether the cash item was properly entered upon the books of the bank or whether the directors should have called the attention of the bank examiner to error in his report, but whether the stock was purchased by the directors for themselves and not for the bank and was held by the bank for their use and benefit. The judge has answered this question in the negative, and the testimony offered by the defendants supports his finding. The statement in the report to the tax commission that the stock was held by a holding company and the failure of the defendants to deny to the bank examiner the erroneous statement contained in his report were matters to be considered in support of plaintiff's case and in contradiction and impeachment of the position and testimony of defendants; but they were not conclusive of the issue which the court had to determine so as to exclude consideration of evidence to the contrary.

It is strenuously argued that defendants are estopped by their conduct to deny ownership of the stock; but we see no basis upon which such estoppel can be based. Their names were not on the list of stockholders required by the statute to be kept (12 U.S.C.A. § 62), they were not

owners of the stock, and they never at any time held themselves out as stockholders or authorized any one else to do so, if their version of the matter is accepted. Consequently, the principle laid down in Pauly v. State Loan & Trust Co., 165 U.S. 606, 623, 17 S.Ct. 465, 41 L.Ed. 844, has no application. Only one or two of them admitted that the item in the examiner's report with respect to the stock, which was not, of course, a part of the stock list, was called to their attention at the May 14th meeting; and it is in evidence that these disclaimed all liability at that time. This item was as consistent with the idea that each of the directors individually had agreed to take his pro rata share of the stock as that they had agreed to take all of it jointly among themselves; and if this interpretation be given it, the defendants Wingo and Moore had complied with the agreement, as each has purchased 10 shares of the stock for which he has made payment and upon which he has also paid an assessment levied under the statute.

We know of no principle of law upon which the defendants can be held bound by the examiner's report, which they did not make and for the making of which, if they are to be believed, they were in no wise responsible. The fact that they did not protest to the examiner or to the Comptroller after some of them had seen it at the May 14th meeting would not estop them; for there is no legal requirement that they make such protest and no evidence of change in position of any one as a result of their failure to make it. But, as we have pointed out above, even if they were bound by it, there is nothing in it which holds them out as having jointly purchased the stock or as having agreed to purchase it jointly; and it is only on this theory that the action as instituted could be maintained.

Exception was taken to the admission of testimony showing the circumstances under which the stock was purchased by the bank, on the ground that such testimony was in contradiction of the bank's records; but there was no such contradiction. On the contrary, the resolution looking to the purchase of the stock shows an authorization of purchase by the bank; and the evidence objected to shows that the purchase was made by the bank in accordance with statutory requirements. There is a contention that evidence tending to show a different state of facts from that

set forth in the report of the examiner should have been excluded, but we see no basis for such contention. That report was admissible as evidence against defendants when evidence was introduced that it was called to their attention; but it was not a contract as to which the parol evidence rule was applicable, nor was it one of the corporate records of the bank which could not be contradicted by parol. It did not become a corporate record merely because a copy of it was furnished the bank and filed among its records and papers; for if this were so, a corporation would be bound by everything contained in its letter files.

The plaintiff complains because the trial judge held that there was a variance between the allegations of the complaint in the cash item case and the proofs adduced and because he refused to permit an amendment to the complaint so as to declare on an implied instead of on an express contract. The matter of permitting an amendment was one resting in the sound discretion of the trial judge; but we think that the ruling is entirely immaterial here, for it is clear, as the judge held, that plaintiff would not have been entitled to recover if the amendment had been allowed.

A serious question arises as to whether plaintiff is entitled to be heard in this court, in view of the fact that he has asked a joint judgment against twelve defendants on what he alleges as a joint liability on their part, and from a judgment in their favor has appealed as to only three of them without pursuing the practice of summons and severance as to the others. Even though the liability of the defendants in a case such as is alleged be several as well as joint, judgment in favor of those not appealed against would protect them against a demand for contribution on the part of the others if judgment in favor of the others should be reversed; and there would seem to be the same reason for summons and severance as there is in cases where judgment has gone against several defendants and only a part of them desire to appeal. We need not decide this question, however, as a dismissal of the appeal would not differ in effect from an affirmance of the judgments, and we have reached the conclusion on the merits that the judgments should be affirmed.

Affirmed.