## NORTH AMERICAN ACC. INS. CO. v. ANDERSON.
### No. 1721.

Circuit Court of Appeals, Tenth Circuit.
Dec. 10, 1938.

Thomas Keely, of Denver, Colo. (L. Bernard Davis, of Denver, Colo., on the brief), for appellant.

Walter W. Blood, of Denver, Colo. (Addison M. Gooding, of Steamboat Springs, Colo., on the brief), for appellee.

Before LEWIS, BRATTON, and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

The appellee, Gertrude N. Anderson, beneficiary, brought this action on an accident insurance policy issued by appellant to and on her husband, Arthur E. Anderson, deceased.

On September 25, 1920, appellant, for a valuable consideration, executed and delivered to appellee's husband said policy, by which he was insured in the principal sum of $7,500, against bodily injury sustained during the term of the policy through accidental means, resulting directly, independently and exclusively of all other causes in death.

On November 22, 1936, said insured sustained a bodily injury through accidental means, to-wit, electrocution, resulting in his death on that date.

At the time of the issuance of said policy, said insured was the manager at Grand Junction, Colorado, of an electric light and power company, a public utility, serving that community. At the time he was actually killed by electrocution he was manager of the Colorado Corporation at Steamboat Springs, Colorado, a public utility, serving not only Steamboat Springs, but also towns and mining camps in that vicinity, with its manager's office at Steamboat Springs, and its power plant at MacGregor, Colorado, twelve miles distant. His accidental death occurred at MacGregor in the electrical substation adjoining the power plant, when insured was there examining or observing broken or defective insulators to determine what replacements or repairs he, as the manager of the company, should order to be made.

It is conceded that death was caused by bodily injury caused by accidental means (electrocution during the term of the policy). The only question in issue was whether the company was liable for the stated sum in the policy of $7,500 or for only $3,000, appellant's contention being that insured was killed while performing or doing an act of an occupation classified as more hazardous than that stated in the policy and upon which the rate and classifications were based, and when he was doing an act of an occupation classified by the defendant under Risks and Premium Rates as that of Manager or Superintendent of a Power Plant, Class "B", under which the insured was entitled, at the premium rate of $30 per year, to receive only the sum of $3,000 in case of death by accidental means, which amount appellant had duly tendered to appellee.

At close of all the evidence, appellant's counsel requested the court to peremptorily instruct the jury that plaintiff was entitled to a verdict in the sum of $3,000 only, first, because the uncontradicted evidence showed that the insured was injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy; and, second, because the insured was injured while he was doing an act pertaining to an occupation classified as more hazardous than that stated in the policy; and, third, because the premium rates and classification of risks pertaining to the policy having been filed with the state official having supervision of insurance in said state, and the last established rates and classifications of the company, those which are applicable in the case, the plaintiff thereunder was and is entitled to recover said sum of $3,000 only.

Appellee's counsel then moved for a directed verdict in her favor, in sum of $7,-500, arguing that the request for a directed

verdict in favor of the appellee, coupled with the motion made by the appellant, took the case from the jury. The court agreed with appellee's counsel unless one side reserved the right to go to the jury.

Appellee's counsel then stated:

"Neither side has reserved that right. I do not care to reserve that right. I think it is purely a question of law."

The court sustained appellee's motion.[1]

■ The effect was that both parties waived trial by jury, thereby consenting for finding and judgment by the court, and only question here on appeal is whether there was substantial evidence to support the court's finding and judgment. Conyers v. Cleveland et al., 4 Cir., 87 F.2d 195; and White v. United States, 10 Cir., 48 F.2d 178.

■ The application describes an occupation with "office duties, only," the policy referring to "office and traveling duties." The statement in the policy controls. New York Life Ins. Co. v. Tolbert, 10 Cir., 55 F.2d 10, certiorari denied 285 U.S. 551, 52 S.Ct. 407, 76 L.Ed. 941; Pacific Mut. Life Ins. Co. v. Van Fleet, 47 Colo. 401, 107 P. 1087.

■ Whether insured's examination or observation of the insulator pertained to his

---

[1] In sustaining said motion the court instructed the jury:

"The sole question, as you have no doubt observed from the evidence, and the discussion, is whether the plaintiff, Mrs. Anderson, should recover $7,500.00, or only the $3,000.00 the defendant admits is due. It depends upon the construction of the policy. The principal amount payable and the premium rate depends upon the duties performed by the insured. That is to say, if the insured was engaged in an occupation rated by the company as a preferred risk, where there is little danger of accidental injury, his premium rate is less than if he was engaged in an occupation that is rated as more hazardous.

"The company agreed with Mr. Anderson when it issued this accident policy that his occupation was 'manager, office and traveling duties.' That is a preferred risk, and the defendant gave him a low rate based on the assumption that a man in that occupation is less likely to be injured than another person, for instance, employed in the same business of running a power plant, but stationed at the power plant itself, operating the machinery, climbing around these wires, which, according to the evidence, carried large voltages of electricity. The defendant contends that the deceased got out of the occupation named in the policy when he climbed up this tower, a very hazardous thing to do, and attempted to fix the broken insulators which were interfering, not with the efficient operation of the plant or the service that this public utility was giving, but with radios around the neighborhood. He touched a hot wire and was electrocuted and killed. If that was in his regular and usual duties or occupation the contention would have to be sustained. But the evidence here discloses that he was an office manager engaged in executive duties, occasionally only visiting the various plants and sta-

tions of the company in the performance of his regular duties as manager.

"The law, according to the two cases which have been cited, in Colorado and in this Tenth (Fourth) Circuit, that is, in this federal court, is that with respect to the manager of a plant like this it is contemplated that he shall visit the physical properties of the company he works for, and his work, while chiefly performed at a desk in an office, necessarily requires him to occasionally visit the plants. You will recall the evidence that the deceased had climbed this tower only about fifteen times in nine years, and then only when there was a most unusual situation such as an accident to insulators, for instance. You will also recall that before he went up this tower the man with him cut off this particular circuit that was causing the trouble. The switch was thrown so that it was a cold circuit, and could be touched and handled I assume, without danger.

"I think that the plaintiff (appellee) must prevail because it was not the deceased regular duty nor did he regularly go into this tower and take the risk incident thereto. Which otherwise would put him into a lower classification with a bigger premium and a less principal sum in the event of injury. Furthermore, this policy was drawn up by the defendant, the insurance company, and the law is that in case of doubt in construing an Isurance policy it must be construed most strongly against the insurance company, because it is their instrument and their language.

"So for these reasons, gentlemen, the Court grants the motion for judgment in favor of the plaintiff, and you are instructed to return a verdict in plaintiff's favor, Gertrude N. Anderson, for $7,500.00 with interest at six per cent. from November 22, 1936, and that she have her costs."

duties as manager of the corporation was a question under the status of this record for determination by the court.

The insured's classification was as a select or "Class A" risk, and his duties described in the policy as "manager, office and traveling duties," contained the following provision:

"This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the insured is injured after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy, or while he is doing any act or thing pertaining to any occupation so classified, except ordinary duties about his residence or while engaged in recreation, in which event the Company will pay only such portion of the indemnities provided in the policy as the premium would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation."

Appellant's contention is that at the time of his death the insured was doing an act of an occupation classified by the defendant under its classification of Risks and Premium Rates as that of Manager or Superintendent of a Power Plant, and that its classification of Risks and Premium Rates places a Manager or Superintendent of a Power Plant in Class "B", under which the insured was entitled, at the premium rate of $30 per year, to receive only the sum of $3,000 in case of death by accidental means.

Under Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487, the constitution, statutes of Colorado, and decisions of its Supreme Court control.

In Rex v. Continental Casualty Company, 96 Colo. 467, 44 P.2d 911, it was held [page 912]:

"When the defendant company and insured entered into the contract and classified the latter as a select risk with the duties of 'General manager, office and traveling duties only,' the parties by the use of those words intended that there were certain duties the insured might perform, and if he was injured or killed in the course of their performance, he or his beneficiary could recover the face of the policy. There were certain other things the parties had in mind, incidental to classifications more hazardous, and also not incidental to the duties of 'General manager, office and traveling duties only,' that, if insured did them, would entitle defendant company to scale down the amount to be paid for an injury or death occurring while he was doing them.

"It is assumed that when the parties classified the deceased as general manager of a limestone company with office and traveling duties, they had in mind that he would do the things general managers of such concerns usually do. It also is assumed that when the general manager traveled he did so, not merely for the sake of traveling, but with a destination in view and duties to be performed upon his arrival. All the duties of a manager of a limestone company, in the very nature of things, cannot be carried on within the confines of an office. It would be a narrow construction of the policy to say that deceased was within its terms when he was sitting in his office and when he was actually traveling, but ceased to be insured when he had arrived at his destination even though he was engaged in the performance of duties that pertained to the general management of the business. It seems to us to be a logical conclusion that an act may at the same time pertain to two occupations, one of which is more hazardous than the other. There may be cases where an act performed is so foreign to the work specified in the classification set forth in a policy as to show that it could not pertain to two classifications. For example, the mere statement that one classified as clerk in a dry goods store was injured accidentally while diving for buried treasure discloses the impossibility of the act performed pertaining to an occupation under the classification of dry goods clerk."

See, also, Pacific Mut. Life Ins. Co. v. Van Fleet, supra.

In the instant case, a jury in effect having been waived, the trial judge was the trier of the facts, charged with the duty of making deductions from the undisputed facts, and this court may not substitute its own conclusions as to the facts for those of the court below, when same are supported by substantial evidence as it is under this record.

The Colorado cases which control appear to be in line with the weight of decided cases from other jurisdictions. Indemnity Ins. Co. of North America v. Sloan, 4 Cir., 68 F.2d 222; Smith v. Massachusetts Bonding & Ins. Co., 179 N.C. 489,

102 S.E. 887; Fidelity Health & Accident Co. v. Holbrook, 96 Ind.App. 457, 169 N.E. 57, 170 N.E. 346; King v. Standard Acc. Ins. Co., Mo.App., 248 S.W. 984; and Elkins v. Aetna Life Ins. Co., D.C.S.D.Tex., 26 F.2d 277.

In Metropolitan Casualty Ins. Co. of New York v. Stahl et al., 3 Cir., 72 F.2d 881, the policy under the heading "Change of Occupation," provided for two alternative contingencies: (1) If the insured is injured after having changed his occupation to one classified by the company as more hazardous than that stated in the policy, or (2) if he is injured while he is doing any act or thing pertaining to any occupation so classified. In either event, the appellant agreed to pay only such portion of the indemnity provided in the policy as the premium paid would have purchased at the rate but within the limit fixed by the company for such more hazardous occupation. The District Court presented to the jury the question as to whether Stahl had changed his occupation from that set out in his application for insurance to one classified as more hazardous, but failed to present to the jury the question as to whether Stahl was injured while doing any act or thing pertaining to any more hazardous occupation than that set forth in his application for insurance.

In the opinion it is said [page 883]:

"The District Court, throughout the trial and in its charge, adhered to the view that there could be no abatement from the face amount of the policy unless the jury found that Stahl habitually and continuously did such acts or things that his occupation was changed from that of proprietor and inspector to one of a more hazardous nature. We think the District Court should have permitted the jury to determine, not only whether there was an actual change of occupation, but also whether, at the time the accident occurred, Stahl was doing an act or thing ordinarily done by one engaged in a more hazardous occupation. We conclude that failure to instruct the jury upon the second of the alternative contingencies which would avoid liability under the policy was error which resulted in prejudice to the appellant."

In Funk v. Aetna Life Ins. Co. of Hartford, Conn., 9 Cir., 95 F.2d 38, the defense was "change of occupation." A jury was waived, and the trial court found for defendant, and on appeal it was held that the court was without jurisdiction to consider the sufficiency of the evidence to support the findings.

In Conyers v. Cleveland, supra, 87 F.2d 196, it is said:

"At the conclusion of the evidence, both sides moved for a directed verdict, and the trial judge thereupon passed upon the issues and directed verdict for defendants. * * * As both sides moved for a directed verdict, there was a waiver of jury trial; and the only question which arises with respect to this aspect of the case is whether there was substantial testimony to support the court's finding."

The evidence discloses that approximately fifteen times in nine years the insured climbed into the substation to examine for broken insulators or bushings, it not being his practice and presumably not his intention on November 22, 1936, to make the actual, physical replacement. Insured and the Chief Engineer on the morning in question climbed into the structure of the substation to observe this damaged equipment. Having made such observation, he was attracted by a noise in another portion and while examining the insulator he was electrocuted.

Under the Colorado holding, the insurance company is liable for the full amount of the policy, though the act done when the accident occurred pertained to a more hazardous occupation than that stated in the policy, if it also pertained to the principal occupation so stated, being done occasionally and incidentally to and in the line of the duties of the principal occupation. It was incumbent upon the insured as manager of a public utility corporation to see that the plant and equipment was in proper order, which necessitated occasional inspection. When so examining, observing or looking, he was still acting as manager.

The finding and judgment of the lower court is supported by substantial evidence and should be affirmed.